UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
RAHSI McCLEAN,

       Plaintiff,

   -against-

THE COUNTY OF WESTCHESTER, THE CITY OF
MOUNT VERNON, FORMER MOUNT VERNON
POLICE DETECTIVE, DANIEL IBANEZ, MOUNT
VERNON POLICE DETECTIVES BRENT GAMBLE,
DAVID CLARKE, FORMER MOUNT VERNON LT.
VINCENT MANZIONE, and MOUNT VERNON SGT
GREGORY ADDISON, in their individual and official
capacity, INVESTIGATOR MARECIA BALTIMORE,
in her individual and official capacity, as a FORMER
MOUNT VERNON POLICE DETECTIVE and an
(Investigator) of the Westchester County District
Attorney's Office, and ASSISTANT DISTRICT
ATTORNEY JEAN PRISCO in her official capacity as
a WESTCHESTER COUNTY ASSISTANT DISTRICT
ATTORNEY,

       Defendants.

-------------------------------------------------------------------X

**OPINION & ORDER**

17-CV-4492 (CS)

<u>Appearances</u>:

Pamela D. Hayes
Law Office of Pamela D. Hayes, Esquire
New York, New York
*Counsel for Plaintiff*

Justin R. Adin
Westchester County Attorney's Office
White Plains, New York
*Counsel for the County Defendants*

Andrew C. Quinn
Steven J. Bushnell
The Quinn Law Firm, PLLC
White Plains, New York
*Counsel for the City Defendants*

1

Seibel, J.

Before the Court are the motions to dismiss of Defendants Westchester County and Assistant District Attorney ("ADA") Jean Prisco (collectively the "County Defendants"), (Doc. 27), and Defendants the City of Mount Vernon, Former Detective Daniel Ibanez, Detective Brent Gamble, Detective David Clarke, Former Lieutenant Vincent Manzione, Sergeant Gregory Addison, and Former Detective Marecia Baltimore (collectively the "City Defendants"), (Doc. 31).

## I.      BACKGROUND

I accept as true the facts, but not the conclusions, set forth in Plaintiff's Amended Complaint.  (Doc. 20 ("AC").)

### A.      Facts

On August 8, 2011, at 9:40 p.m., there was a shooting on South 12th Avenue between Second and Third Streets in the City of Mount Vernon, New York.  (*Id.* ¶ 15.)  Two individuals – Gloria Nartey and Clifton Wells – were shot.  (*See id.*)  Although Wells survived the shooting, Nartey never regained consciousness and was pronounced dead at the hospital.  (*Id.* ¶¶ 15, 17.)

The next day, officers of the Mount Vernon Police Department ("MVPD") interviewed Wells at Montefiore and Jacobi Hospitals and later at the MVPD lockup.[1]  (*Id.* ¶ 16.)  Wells reported he and three other people – Ricky Young, Antoinette "AJ" Brown, and Jasmine Smith – were outside smoking marijuana in front of a house before the shooting occurred.  (*See id.* ¶¶ 16, 24, 39; Doc. 32 ("City Ds' Mem.") at 3.)  He further told the police that it was dark, that he ran from the scene, and that he did not see who shot him.  (AC ¶ 16.)

_____

[1]  After Wells was released from the hospital, he was taken to the MVPD and was arraigned at the Mount Vernon Municipal Court on an outstanding warrant.  (AC ¶ 16.)

That same day, MVPD Lieutenant Manzione assigned Detectives Baltimore and Ibanez to retrieve video tapes from 70 West Third Street and 109 South 12th Avenue. (*Id.* ¶ 19.) While the detectives retrieved the tapes and viewed them with Manzione and Clarke,[2] the tapes were not vouchered or secured for safekeeping. (*Id.*) Detectives Baltimore and Addison were directed to return to 70 West Third Street for additional footage. (*Id.* ¶ 20.) Although the detectives retrieved additional tapes, they did not voucher or preserve them. (*Id.*) In all, at least three sets of tapes were not vouchered or preserved. (*Id.* ¶ 23.)

As of August 9, 2011, MVPD officers had canvassed the area where the shooting occurred and obtained several descriptions of the shooter. (*Id.* ¶ 21.) They also interviewed two witnesses, Brown and Smith, (*id.* ¶ 24), but no one identified or said they recognized the shooter, (*id.* ¶¶ 21, 24). Six days later, Smith told an MVPD officer that the shooter was Plaintiff and that she was afraid to make the identification. (*Id.* ¶ 25.) At that time, Smith had outstanding bench warrants and open cases. (*Id.*)

On September 30 and October 1, 2012, Detectives Gamble and Clarke traveled to South Carolina to interview Wells. (*Id.* ¶ 26.) Gamble brought a photo array, which included a picture of Plaintiff, while Clarke brought pictures of other individuals. (*Id.*) The interview was recorded by South Carolina authorities. (*Id.* ¶ 27; *see* Doc. 20-11.) Wells told the detectives that he thought he saw "Zimmy" – a nickname for Plaintiff, (Doc. 20-8 at 1; Doc. 20-9 at 2) – before the shooting when Wells was walking around the neighborhood. (Doc. 20-11 at 5:16-17.) He further reported that the shooter was "a dude with a hoodie," (*id.* at 8:8-23), and that Wells ran

---

[2] The Court presumes that all references in the AC to "Detective Clark" are references to Defendant Clarke given the similarity of the names and the City Defendants' seeming acceptance that the allegations pertain to Defendant Clarke. (*See* City Ds' Mem. at 5-6.) The Court notes, however, that Plaintiff references a "Detective Neil Clark" in one of his opposition briefs, (Doc. 36 ("P's County Ds' Opp.") at 2), so the misspelling in the AC is particularly careless.

from the scene after he was shot, (*see, e.g.*, *id.* at 10:4-13). Wells also told the detectives that at some point after the shooting, his cousins and other people told him that "Zimmy" had shot him and was sorry for what happened. (*Id.* at 15:6-15; *see* AC ¶ 27.) He also informed the detectives that he had seen Plaintiff since the shooting and that Plaintiff would not look at him. (Doc. 20-11 at 15:15-17.) At some point after Wells provided his account, Detective Gamble showed Wells a photo array, pointed to Plaintiff's picture, and told Wells to "write [his] initials there." (AC ¶ 27.)[3] Wells then asked, "[C]an I write that's the one who supposed to have shot me?" (*Id.*) Wells wrote a statement to that effect on the photo array as Detective Gamble continued to point to Plaintiff's picture. (*Id.*)

In 2013, Detectives Gamble and Clarke asked their supervisor, Lieutenant Manzione, what they should do with the photo array, the other pictures, and the video tape (presumably of the interview, but the AC does not make that clear). (*Id.* ¶ 28.) According to Clarke, Manzione replied, "[D]on't lose it and don't do anything with it," which Plaintiff alleges constitutes a violation of MVPD rules and regulations. (*Id.*) At some point prior to Plaintiff's subsequent criminal trial arising from the August 8, 2011 incident, the original array was lost and was not presented to the Court, although a photocopy of the photo array exists. (*Id.* ¶¶ 27 n.3, 28.)

On December 2, 2013, MVPD Detective Christopher DiMase interviewed Tyshawn ("Cali") Burroughs, who, despite previously stating that he had no knowledge of the shooting, reported that he was a witness and that Plaintiff was the shooter. (*See id.* ¶ 45; Doc. 20-8.) In his report dated December 5, 2013, DiMase noted several inconsistencies in Burroughs's account

---

[3] The exhibit attached to the AC is sixteen pages of a transcript of the Wells interview. The alleged conversation concerning that identification is not captured within those sixteen pages, and the transcript appears incomplete, given that the portion provided does not contain the conversation alleged to have taken place regarding the identification and because the end of the transcript lacks the common niceties associated with the conclusion of an interview. Thus, there is a reasonable inference that the identification occurred later on during the interview, after Plaintiff informed the detectives that he saw Plaintiff on the night of the shooting and heard that Plaintiff was the shooter.

and that Burroughs admitted to telling DiMase what he wanted to hear so that DiMase would help Burroughs get out of two outstanding warrants.  (AC ¶ 48; Doc. 20-8.)  When DiMase turned in his report, ADA Prisco of the Westchester County District Attorney's Office told DiMase not to put his opinion in his reports.  (AC ¶¶ 46-47.)

On or about April 7, 2016, ADA Prisco filed a material witness application for Burroughs to procure his grand jury testimony.  (Doc. 20-9.)  When Plaintiff's counsel requested a copy of that application, ADA Prisco initially produced a redacted copy of the affidavit and did not produce an unredacted version until trial.  (AC ¶¶ 51-52.)  Plaintiff likewise did not receive a copy of DiMase's December 5, 2013 report until trial and asserts that it should have been produced when Plaintiff demanded it in an omnibus motion.  (*Id.* ¶ 49.)

Testimony was presented to a grand jury, (*see id.* ¶ 48), Plaintiff was indicted for the shooting, and the case proceeded to a jury trial beginning in April 2017, (*see id.* ¶ 52).[4]  ADA Prisco turned over unredacted copies of material witness applications during the trial, but Plaintiff alleges, without further explanation, that by that time "it was too late."  (AC ¶ 52.)  He further asserts that ADA Prisco admitted in her closing argument that the City of Mount Vernon and its police officers were liable for losing evidence when she stated, among other things, that their actions were "inexcusable" and that disciplinary action should be taken.  (*Id.* ¶¶ 53, 62; Doc. 20-12 at 34:22-36:7.)

---

[4]  Although Plaintiff does not explicitly allege in his AC that he was indicted by a grand jury, he references the grand jury proceedings, (*see* AC ¶ 48; *see also* Doc. 20-9 (application for Material Witness Order to secure attendance of Burroughs before grand jury)), and the subsequent trial, (*see* AC ¶ 52, Doc. 20-1), and murder charges can only be brought by indictment, (*see* N.Y. Const. art. I, § 6; N.Y. Crim. Pro. Law § 195.10(1)(b))), so he must have been indicted.  Plaintiff concedes as much.  (*See* P's City Opp. at 2, 9.)

On or about May 16, 2017, the jury rendered a verdict of not guilty, (AC at 36 n.1), and the court ordered that the matter be sealed pursuant to New York Criminal Procedure Law § 160.50, (Doc. 20-1).

### B.    Procedural History

Plaintiff commenced the instant action on June 14, 2017, asserting claims under 42 U.S.C. §§ 1983 and 1988 against Westchester County; Anthony Scarpino, the District Attorney for Westchester County; the City of Mount Vernon; Ibanez; Gamble; Clarke; Manzione; Addison; and Baltimore.  (Doc. 1.)  A pre-motion conference was held on September 11, 2017, at which time the parties and the Court discussed Defendants' anticipated motions to dismiss. (Minute Entry dated Sept. 11, 2017.)  At that conference, the Court granted Plaintiff leave to file an amended complaint, (*id.*), which Plaintiff filed on November 13, 2017, (Doc. 18).  The Amended Complaint removes Scarpino as a defendant, adds ADA Prisco, and asserts the following claims:  (1) deprivation of civil rights under 42 U.S.C. § 1983; (2) false arrest and false imprisonment; (3) malicious prosecution; (4) malicious abuse of process; (5) denial of the right to a fair trial; (6) § 1983 conspiracy; (7) failure to intervene; (8) municipal liability; (9) negligent hiring, retention, supervision, and training; (10) malicious prosecution in violation of New York law; (11) negligent infliction of emotional distress in violation of New York law; (12) negligent hiring, supervision, and retention in violation of New York law; and (13) negligent training and supervision in violation of New York law.  (AC at 1; *id.* ¶¶ 64-152.)  All claims seem to be advanced against all Defendants.

On April 18, 2018, Defendants filed their bundled motion papers, including the County Defendants' motion to dismiss, (Doc. 27), and memorandum of law in support of that motion, (Doc. 28 ("County Ds' Mem.")); the City Defendants' motion to dismiss, (Doc. 31), and

memorandum of law in support of that motion, (City Ds' Mem.); the County Defendants' reply, (Doc. 30); and the City Defendants' reply, (Doc. 34). Plaintiff filed his opposition briefs on November 8 and 9, 2018, (Doc. 35 ("P's City Opp."); Doc. 36 ("P's County Opp.")), although hard copies of both briefs were provided to the Court well before that date.

## II.   LEGAL STANDARDS

### A.   Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted). While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).[5]

### B. Documents Properly Considered

When deciding a motion to dismiss, a court is entitled to consider:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents "integral" to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint . . . , and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Weiss v. Inc. Vill. of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) (internal quotation marks omitted). To be incorporated by reference, the complaint must make "a clear, definite and substantial reference to the documents." *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (internal quotation marks omitted). "A document is integral to the complaint where the complaint relies heavily upon its terms and effect. Merely mentioning a document in the complaint will not satisfy this standard; indeed, even offering limited quotation[s] from the document is not enough." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (alteration in original) (citation and internal quotation marks omitted).

I may consider the exhibits attached to Plaintiff's AC: (1) a certification of acquittal dated May 16, 2017, (Doc. 20-1); (2) Plaintiff's initial complaint dated May 31, 2017, (Doc. 20-

---

[5] In his opposition briefs, Plaintiff repeatedly faults Defendants for citing cases addressing motions for summary judgment. (*See, e.g.*, P's City Opp. at 12; P's County Opp. at 12.) Although the legal standards governing motions for summary judgment and motions to dismiss differ, Defendants rely on summary-judgment decisions merely to recite the elements of the claims, the plausibility of which the Court is to assess. Accordingly, Plaintiff's attempts to distinguish those cases solely on the basis that they are summary-judgment decisions is unavailing.

2); (3) excerpts from the MVPD Department Manual, (Doc. 20-3); (4) complaints filed in two other lawsuits against the City of Mount Vernon, Ibanez, and others, (Docs. 20-4, 20-5, 20-6); (5) a list of cases in which Plaintiff asserts courts have found violations of constitutional rights, based on facts similar to those alleged by Plaintiff, on the part of prosecutors or police officers (most of whom are not identified in the decisions cited, and none of whom who are identified are Defendants in this action), (Doc. 20-7); (6) DiMase's report dated December 5, 2013 concerning his interview of Burroughs, (Doc. 20-8); (7) redacted and unredacted versions of ADA Prisco's April 7, 2016 material witness application concerning Burroughs, (Doc. 20-9); (8) a copy of a photo array in which Plaintiff alleges that "Clifton Wells [i]dentified Plaintiff," (AC at 20; Doc. 20-10); (9) an excerpt of the transcript of the October 1, 2012 audio recorded interview of Wells, (Doc. 20-11); (10) transcript excerpts from the underlying criminal case, including portions of sworn witness testimony and ADA Prisco's summation, (Doc. 20-12); and (11) an April 25, 2017 letter from ADA Prisco to Plaintiff's counsel and another attorney concerning statements made by Young and an excerpt of ADA Prisco's examination of Young at an unspecified proceeding, (Doc. 20-13).

The Court notes, however, that the exhibits attached to Plaintiff's AC total over 150 pages. Some of the exhibits are not cited in the paragraphs of the AC, while others are referenced generally and without any pincites. "While the Federal Rules of Civil Procedure do not categorically bar the practice of attaching exhibits to a complaint," *United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 466 n.78 (E.D.N.Y. 2007), the Court is under no obligation to scour the exhibits attached to a complaint "with no guidance as to which specific allegations are intended to be deemed incorporated," *id.* at 466; *see Cleveland v. Breslin*, No. 97-CV-486, 1997 WL 275101, at *2 (N.D.N.Y. May 16, 1997) ("Plaintiff may, of course, attach

exhibits to his amended complaint, however, the Court will not independently examine exhibits that [he] does not specifically reference (by the exhibit's page number) in his amended complaint.").  This is particularly true where, as here, the plaintiff is represented by counsel.

The County Defendants attached seven exhibits to the declaration of their counsel (Doc. 29 ("Adin Decl.")):  (1) a transcript dated September 27, 2017 of an examination of Plaintiff pursuant New York General Municipal Law § 50-h, (*id.* Ex. 1); (2) the Notice of Claim that Plaintiff served on the County of Westchester, (*id.* Ex. A); (3) the Demand for Examination served by the County on Plaintiff, (*id.* Ex. B); (4) a September 20, 2017 letter from the County Defendants' counsel to Plaintiff's counsel, (*id.* Ex. C); (5) a September 22, 2017 letter from Plaintiff's counsel to counsel for the County Defendants, (*id.* Ex. D); (6) a September 6, 2017 letter from the County Defendants' counsel to Plaintiff's counsel, (*id.* Ex. E); and (7) a September 22, 2017 letter from the County Defendants' counsel to Plaintiff's counsel, (*id.* Ex. F).

The City Defendants attached fifteen exhibits to the declaration of their counsel, (Doc. 33 ("Bushnell Decl.")):  (1) a copy of Plaintiff's AC, excluding the exhibits, (*id.* Ex. A); (2) the Molineux/Ventmiglia Application of the Westchester County District Attorney's Office in the underlying criminal proceeding, (*id.* Ex. B); (3) the Westchester County Court Judge's May 4, 2017 "Decision After Hearing" on the prosecution's *Sirois* motion in the underlying criminal case, (*id.* Ex. C); (4) portions of transcripts from pre-trial hearings in the underlying criminal action, (*id.* Ex. D); (5) excerpts of transcripts from the trial in the underlying criminal case, (*id.* Ex. E); (6) the indictment in the underlying criminal case, (*id.* Ex. F); (7) the transcript of the Westchester County Court Judge's decision denying Plaintiff's motion for a Trial Order of Dismissal in the underlying criminal action, (*id.* Ex. G); (8) an MVPD Incident Report dated

August 8, 2011, (*id.* Ex. H); (9) an MVPD Supplementary Report dated August 12, 2011 concerning the Wells interview at Jacobi Medical Center, (*id.* Ex. I); (10) Wells's statement to the MVPD dated August 8, 2011, (*id.* Ex. J); (11) Smith's statement to the MVPD dated August 9, 2011, (*id.* Ex. K); (12) Smith's statement to the MVPD dated August 15, 2011, (*id.* Ex. L); (13) Brown's statement to the MVPD dated August 9, 2011, (*id.* Ex. M); (14) an MVPD supplemental report dated May 13, 2013 concerning the Wells interview in South Carolina, (*id.* Ex. N); and (15) Jason Dulyx's statement to the Criminal Investigation Unit of the Westchester County District Attorney's Office dated November 13, 2015, (*id.* Ex. O).

The Court need not determine whether Defendants' exhibits are properly considered in deciding the instant motion because, aside from the AC (which is, of course, properly considered), the documents submitted have no bearing on the Court's analysis.[6]

## III.   DISCUSSION

### A.      Rule 8

Rule 8(a) of the Federal Rules of Civil Procedure provides that a complaint must contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "'When a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative or in response to a motion by the defendant, to strike any portions that are redundant or immaterial . . . or to dismiss the complaint.'" *Lafurno v. Walters*, No. 18-CV-1935, 2018 WL 2766144, at *3 (E.D.N.Y. June 8, 2018) (alteration in original) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)) (collecting cases). Nevertheless, "[d]ismissal under Rule 8 is 'usually reserved for those cases in

---

[6] The Court notes, however, that the City Defendants seem to want the Court to rely on at least some of these documents for the truth of the matters asserted therein. While the Court may take judicial notice of public documents, it may do so only for the fact of their existence, not for their truth. *See, e.g.*, *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.'" *Warner Bros. Entm't Inc. v. Ideal World Direct*, 516 F. Supp. 2d 261, 269 (S.D.N.Y. 2007) (citing *Salahuddin*, 861 F.2d at 42).

The County Defendants contend that the AC should be dismissed pursuant to Rule 8 because it employs group pleading and fails to notify each Defendant of the specific allegations asserted against him or her. (County Ds' Mem. at 15.) "It is well-established in this Circuit that plaintiffs cannot simply 'lump' defendants together for pleading purposes." *Canon U.S.A., Inc. v. F & E Trading LLC*, No. 15-CV-6015, 2017 WL 4357339, at *7 (E.D.N.Y. Sept. 29, 2017); *see Ritchie v. N. Leasing Sys., Inc.*, 14 F. Supp. 3d 229, 236 (S.D.N.Y. 2014). Indeed, "Rule 8(a) is violated where a plaintiff, by engaging in 'group pleading,' fails to give each defendant fair notice of the claims against it." *Canon U.S.A.*, 2017 WL 4357339, at *7 (internal quotation marks omitted). But Rule 8 "does not demand that a complaint be a model of clarity," *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order), and "nothing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each," *Canon U.S.A.*, 2017 WL 4357339, at *7 (internal quotation marks omitted). Whether a complaint should be dismissed based on impermissible group pleading hinges on "whether adequate notice is given" that "will enable the adverse party to answer and prepare for trial . . . and identify the nature of the case." *Id.* (internal quotation marks omitted); *see Wynder v. McMahon*, 360 F.3d 73, 79 (2d Cir. 2004).

Plaintiff's claims here are inexcusably asserted against all Defendants or all individual Defendants. (*See* AC ¶¶ 64-152.) "[T]his technique muddles the clarity of the allegations," *Vantone Grp. Liab. Co. v. Yangpu NGT Indus. Co.*, No. 13-CV-7639, 2015 WL 4040882, at *4 (S.D.N.Y. July 2, 2015), particularly because Plaintiff has not pleaded factual allegations that

would support some of the claims against certain Defendants and because he "asserts his claims in conclusory fashion without tying them to the facts he has recited," *Lobban v. Cromwell Towers Apartments, LP*, No. 18-CV-247, 2018 WL 5447544, at *6 (S.D.N.Y. Oct. 29, 2018). Nevertheless, the factual allegations preceding the claims largely specify which Defendant did what, thereby putting the Defendants on notice of Plaintiff's claims. Thus, while the AC is far from clear, and while Plaintiff's carelessness put a needless burden on Defendants and the Court in determining what Plaintiff intended to allege, the group pleading alone does not rise to the level of a Rule 8 violation sufficient to dismiss the AC in its entirety. *See Vantone Grp.*, 2015 WL 4040882, at *4. To the extent Plaintiff's allegations underlying a particular cause of action are insufficient to provide notice to a particular defendant, the Court will dismiss that claim accordingly.

Group pleading is not the only problem with the Complaint. It is written as if intended for a reader fully familiar with the ins and outs of the underlying criminal prosecution. Little effort has been made to provide a comprehensible narrative. Likewise, Plaintiff's briefs are rambling, disorganized, conclusory, and lacking in authority. Were Plaintiff *pro se* and entitled to "special solicitude," *e.g.*, *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006), the hours spent unraveling his claims and arguments would have been appropriate. But the Court should not have to make such efforts when the plaintiff is represented by counsel.

### B.     Absolute Immunity for ADA Prisco

ADA Prisco argues that she is immune from suit under § 1983. (County Ds' Mem. at 5-7.) "It is by now well established that a state prosecuting attorney who acted within the scope of [her] duties in initiating and pursing a criminal prosecution is immune from a civil suit for damages under § 1983." *Shmueli v. City of N.Y.*, 424 F.3d 231, 236 (2d Cir. 2005) (citation and

internal quotation marks omitted) (collecting cases).  "Because the immunity attaches to the official prosecutorial function and because the initiation and pursuit of a criminal prosecution are quintessential prosecutorial functions, the prosecutor has absolute immunity for the initiation and conduct of a prosecution unless [she] proceeds in the clear absence of all jurisdiction."  *Id.* at 237 (citations and internal quotation marks omitted).  Prosecutorial functions include "deciding whether to bring charges and presenting a case to a grand jury or a court, along with the tasks generally considered adjunct to those functions, such as witness preparation, witness selection, and issuing subpoenas."  *Simon v. City of N.Y.*, 727 F.3d 167, 171 (2d Cir. 2013).  "A prosecutor is . . . entitled to absolute immunity despite allegations of h[er] 'knowing use of perjured testimony' and the 'deliberate withholding of exculpatory information,'" notwithstanding the "'reprehensible'" nature of that conduct.  *Shmueli*, 424 F.3d at 237 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 431 n.34 (1976)); *see Warney v. Monroe County*, 587 F.3d 113, 125 (2d Cir. 2009) (prosecutor absolutely immune from liability under § 1983 for alleged *Brady* violation).

If, however, a prosecutor acts in an administrative or investigative capacity, she may claim only qualified immunity.  *See Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir. 1987); *see also Green v. County of Monroe*, 423 F. App'x 98, 100 (2d Cir. 2011) (summary order) ("[A] prosecutor is entitled only to qualified immunity where she 'performs the investigative functions normally performed by a detective or police officer.'") (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)).  "[T]here are no bright lines between quasi-judicial absolutely immune conduct, on the one hand, and investigative and administrative qualifiedly immune behavior, on the other . . . ."  *Day v. Morgenthau*, 909 F.2d 75, 77 (2d Cir. 1990) (internal quotation marks omitted).  But pursuing charges against a particular individual clearly falls within the

prosecutorial phase of a criminal proceeding, while arrests and searches are typically police functions and are not prosecutorial simply because a prosecutor is involved. *Id.* at 77-78.

ADA Prisco asserts that she is immune from suit because she is sued only in her official capacity and the allegations against her pertain to actions taken within the scope of her duties in initiating and pursing a criminal prosecution. (County Ds' Mem. at 5-7.) Those actions include telling Detective DiMase in or around December 2013 not to put his opinion in reports detailing witness accounts, (*see* AC ¶¶ 46-47; Doc. 20-8); procuring witness testimony before the grand jury notwithstanding witness credibility issues, (*see* AC ¶ 48); failing to disclose DiMase's December 5, 2013 report of his conversation with Burroughs when it was demanded in an omnibus motion, (*id.* ¶ 49); disclosing a redacted copy of a material witness order application, (*id.* ¶¶ 51-52); and making certain statements during her closing argument at trial, (*id.* ¶ 53). In his opposition brief, Plaintiff contends that ADA Prisco is not absolutely immune insofar as the claims pertain to her giving advice to police during the investigation and her failure to turn over exculpatory evidence. (P's County Opp. at 3-5.)

Plaintiff is correct that "absolute immunity does not protect a prosecutor's actions during the early stages of a case, such as 'when a prosecutor gives advice to police during a criminal investigation.'" *Fiorito v. DiFiore*, No. 13-CV-2691, 2014 WL 4928979, at *6 (S.D.N.Y. Oct. 2, 2014) (quoting *Van de Kamp v. Goldstein*, 555 U.S. 335, 343 (2009)); *see Simon*, 727 F.3d at 172 ("Absolute immunity is . . . not available for the act of giving legal advice to the police in the investigative phase of a criminal case . . . .") (internal quotation marks omitted). As the Supreme Court has stated, "advising the police in the investigative phase of a criminal case is [not] so intimately associated with the judicial phase of the criminal process that it qualifies for absolute immunity." *Burns v. Reed*, 500 U.S. 478, 493 (1991) (internal quotation marks

omitted).  Additionally, the Second Circuit has explained that a prosecutor's "supervision of and interaction with law enforcement agencies in *acquiring* evidence which might be used in a prosecution . . . are of a police nature and are not entitled to absolute protection."  *Barbera v. Smith*, 836 F.2d 96, 100 (2d Cir. 1987) (emphasis in original).

Here, Plaintiff alleges that in or around December 2013, ADA Prisco advised MVPD Detective DiMase not to include his opinion in his investigative reports.  (AC ¶¶ 46-48.)[7]  This seemingly was in response to DiMase's decision to note that Burroughs, a self-identified witness to the shooting, presented credibility problems.  (*See id.* ¶¶ 45-48; Doc. 20-8 at 1-2.)  Using my "judicial experience and common sense," *Iqbal*, 556 U.S. at 679, I regard ADA Prisco's directive to Detective DiMase as prosecutorial, not investigative.  An ADA is aware that reports of interviews will, if the witness is called at trial or the information is exculpatory, eventually be turned over to the defendant.  Thus, in cautioning a police officer against including the officer's analysis in the report – which would give the defendant a benefit to which he is not entitled and in a sense do defense counsel's work for him or her – the ADA would be wearing her prosecutorial hat, not her investigative one.  Nothing about such an instruction affects the collection or preservation of evidence, and it cannot plausibly be regarded as investigative.

Further, even if ADA Prisco's directive to DiMase was of police nature, thereby precluding absolute immunity, she would at the very least be qualifiedly immune, because there is no clearly established law that such an instruction is unconstitutional.  *See, e.g.*, *Buckley*, 509

_____

[7]  Plaintiff also asserts that ADA Prisco was acting in an investigative capacity when she directed Detective DiMase to interview Burroughs.  (P's County Opp. at 4.)  Although the AC includes allegations that ADA Prisco had a conversation with DiMase after he submitted his report of the interview, (*see* AC ¶ 47), Plaintiff does not allege in his AC that Prisco directed DiMase to interview Burroughs.  Because Plaintiff is not permitted to amend his AC through his opposition brief, *see, e.g.*, *Maxim Grp. LLC v. Life Partners Holdings, Inc.*, 690 F. Supp. 2d 293, 308 (S.D.N.Y. 2010) (collecting cases), the Court declines to consider whether the directive constitutes a prosecutorial or investigative function (although it seems likely to be the latter).  In any event, it is hard to see how directing a police officer to interview a potential witness could violate anyone's rights.

U.S. at 268 (government officials entitled to qualified immunity and "are not subject to damages liability for the performance of their discretionary functions when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known") (internal quotation marks omitted). Indeed, there is no claim at all. There is no right to have an officer's opinion in a police report and, in any event, Plaintiff received the report at issue containing Detective DiMase's opinion, (*see* AC ¶ 49; Doc. 20-8 at 1-2), and does not specify any harm from the timing of its receipt.

Plaintiff's contentions concerning alleged *Brady* violations arising from ADA Prisco's failure to disclose exculpatory or impeachment evidence arising from Detective DiMase's interview of Burroughs are similarly without merit. Prior to Plaintiff's indictment, ADA Prisco had no obligation to disclose *Brady* material and thus Plaintiff is not entitled to damages. *See Leka v. Portuondo*, 257 F.3d 89, 98 (2d Cir. 2001) (*Brady* obligation is to disclose "material evidence favorable to *the defendant in a criminal prosecution*") (emphasis added) (internal quotation marks omitted); *United States v. Smith*, 824 F. Supp. 420, 424 (S.D.N.Y. 1993) (noting absence of precedent for proposition that government is obligated to turn over *Brady* material before indictment is even filed). Further, assuming for the sake of argument that ADA Prisco did not timely disclose the report – which is not pleaded, *see United States v. Coppa*, 267 F.3d 132, 146 (2d Cir. 2001) (government suppresses evidence within meaning of *Brady* only if exculpatory material not disclosed in time for effective use at trial); *see also* AC ¶ 49 (Plaintiff received DiMase report of Burroughs interview during trial); P's City Opp. at 6 (Burroughs did not testify at trial) – Plaintiff likewise cannot obtain damages under § 1983 for any alleged *Brady*

violations that occurred post-indictment because a prosecutor is absolutely immune from liability under § 1983 for such violations. *Warney*, 587 F.3d at 125.[8]

As for the other alleged conduct, Plaintiff fails to respond to ADA Prisco's arguments that she is immune from suit for procuring witness testimony before the grand jury, responding to defense counsel's requests, or for statements during her closing argument at trial. Accordingly, Plaintiff has abandoned his claims against Prisco arising from these allegations. *See Div. 1181 Amalgamated Transit Union v. R&C Transit, Inc.*, No. 16-CV-2481, 2018 WL 794572, at *4 (E.D.N.Y. Feb. 7, 2018) (court has discretion to deem claim abandoned when defendant moves to dismiss that claim and plaintiff fails to address defendant's arguments in opposition brief); *Romeo & Juliette Laser Hair Removal, Inc. v. Assara LLC*, No. 08-CV-442, 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014) ("At the motion to dismiss stage, where review is limited to the pleadings, a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim."). Moreover, such actions are quintessentially prosecutorial, thereby giving rise to absolute immunity. *See Flagler v. Trainor*, 663 F.3d 543, 548-49 (2d Cir. 2011) (prosecutor absolutely immune for conduct in seeking material witness warrant); *Hill v. City of N.Y.*, 45 F.3d 653, 661 (2d Cir. 1995) ("[P]rosecutors are immune from § 1983 liability for their conduct before a grand jury."); *Mosley v. McIntosh*, No. 08-CV-9635, 2009 WL 1542546, at *3 (S.D.N.Y. May 29, 2009) ("[I]t is firmly established

---

[8] Furthermore, most courts have held that "an acquittal extinguishes a Section 1983 plaintiff's due process claim for nondisclosure of *Brady* material." *Ambrose v. City of N.Y.*, 623 F. Supp. 2d 454, 469 (S.D.N.Y. 2009) (collecting cases). Finally, there would be no claim, even absent immunity, for what Plaintiff alleges Prisco did: until she sought a material witness warrant for Burroughs in 2016, she "sat on" the fact that Burroughs lied in his 2013 interview. (P's County Opp. at 5; *see id.* at 4.) How this violated *Brady*, when Burroughs never testified at trial, (*id.* at 6), and when the allegedly false account was inculpatory, remains a mystery.

that a prosecutor cannot be sued under § 1983 on the basis of statements made in court during criminal proceedings against a defendant.").

Thus, Plaintiff's claims against ADA Prisco are dismissed.

## C. Failure to State a Claim

The City and the County Defendants move to dismiss each cause of action for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).[9]

### 1. Deprivation of Civil Rights under 42 U.S.C. § 1983

Plaintiff's first cause of action is a standalone claim for "deprivation of civil rights." (AC ¶¶ 64-70.) "If a civil rights complaint is to survive a motion to dismiss, it must make specific factual allegations indicating a deprivation of rights." *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988) (collecting cases). Where a plaintiff fails to make specific factual allegations concerning the illegal conduct and the resultant harm, the complaint fails to state a claim for deprivation of civil rights under § 1983. *See Neustein v. Orbach*, 732 F. Supp. 333, 346 (E.D.N.Y. 1990). Additionally, because "[i]t is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983," *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (internal quotation marks omitted), "'a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution,'" *Thomas v. Venditto*, 925 F. Supp. 2d 352, 363 (E.D.N.Y. 2013) (quoting *Iqbal*, 556 U.S. at 676).

Here, Plaintiff summarily states that all of the Defendants violated his rights under the First, Fifth, Sixth, and Fourteenth Amendments. (AC ¶ 66; *see id.* ¶ 67.) This is plainly insufficient. It is entirely unclear which of his rights under those Amendments he alleges were

---

[9] Although, as stated above, ADA Prisco is immune from suit, the Court will address whether dismissal is also warranted as to her on the alternative ground that Plaintiff fails to state a claim.

violated and how the first cause of action is distinct from Plaintiff's other claims. *See Folk v. City of N.Y.*, 243 F. Supp. 3d 363, 371 (E.D.N.Y. 2017) (dismissing similar standalone § 1983 claim). Accordingly, Plaintiff's first cause of action is dismissed as to all Defendants.

2.     False Arrest and False Imprisonment

Defendants also seek to dismiss Plaintiff's second cause of action, which is for false arrest and false imprisonment under § 1983. In New York, false arrest and false imprisonment claims are synonymous causes of action. *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991); *Brome v. City of N.Y.*, No. 02-CV-7184, 2004 WL 502645, at *3 (S.D.N.Y. Mar. 15, 2004). In determining whether a plaintiff has sufficiently pleaded a claim for false arrest or false imprisonment under § 1983, courts look to state law. *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996); *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995).

To plead a false arrest or false imprisonment claim under New York law, a plaintiff must establish: "(1) that the defendants intentionally confined plaintiff, (2) that plaintiff was conscious of the confinement and did not consent to it, and (3) that the confinement was not otherwise privileged." *Liu v. N.Y. State Dep't of Health*, No. 16-CV-4046, 2017 WL 3393944, at *5 (S.D.N.Y. Aug. 7, 2017); *see Jocks v. Tavernier*, 316 F.3d 128, 134-35 (2d Cir. 2003); *Singer*, 63 F.3d at 118. "An arrest is justified or privileged if . . . it is based on probable cause." *LaFontaine v. City of N.Y.*, No. 08-CV-1555, 2009 WL 3335362, at *5 (S.D.N.Y. Oct. 14, 2009); *see Singer*, 63 F.3d at 118 ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause."). "Probable cause to arrest exists when the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)

(internal quotation marks omitted).  Once a law enforcement officer "has a reasonable basis for believing there is probable cause" to arrest a suspect, "he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest," *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997), and "the validity of an arrest is not contingent upon an ultimate finding of guilt or innocence," *Bulanov v. Town of Lumberland Constable Meehan*, No. 00-CV-4292, 2002 WL 181365, at *4 (S.D.N.Y. Feb. 6, 2002).

The City Defendants argue that, as a threshold matter, Plaintiff was never arrested because he was already serving an unrelated sentence when he was indicted.  (City Ds' Mem. at 13-14.)  Although "[a] claim for false arrest must be premised on an actual arrest," *Bissinger v. City of N.Y.*, No. 06-CV-2325, 2007 WL 2826756, at *8 (S.D.N.Y. Sept. 24, 2007) (collecting cases), and the AC is silent as to whether Plaintiff was arrested, a claim for false imprisonment need not be premised on an arrest, *see Emanuel v. Griffin*, No. 13-CV-1806, 2015 WL 1379007, at *11 n.3 (S.D.N.Y. Mar. 25, 2015).[10]  Thus, dismissal on this basis is unwarranted.

The City and County Defendants assert that the claim should be dismissed because there was probable cause to arrest or confine Plaintiff, particularly because Smith, a witness to the shooting, identified Plaintiff as the shooter and Wells relayed that others had told him that Plaintiff had shot him.  (*See* City Ds' Mem. at 14-15; County Ds' Mem. at 8-9.)  Although Plaintiff acknowledges the legal standard for determining whether the alleged lack of probable cause is plausible, he completely fails to address Defendants' arguments.  (*See* P's City Opp. at 10; P's County Opp. at 8.)  He states that probable cause determinations are based on the totality of the circumstances and that "the Court should utilize these factors" – factors that he does not

---

[10]  Defendants concede that after his unrelated sentence was over, Plaintiff was detained for some months until his acquittal for the August 8, 2011 shooting.  (City Ds' Mem. at 8 n.9.)

specify – but provides no more than a conclusory assertion that probable cause was lacking.  (*See* P's City Opp. at 10.)

Plaintiff alleges in his AC that Smith initially told police that she did not see the shooter, but later identified Plaintiff as the shooter and reported that she had been afraid to identify Plaintiff.  (AC ¶¶ 24-25.)  Although Plaintiff pleads that Smith had outstanding bench warrants and open cases at the time she identified Plaintiff as the shooter, he does not allege that the officers had reason to believe she was lying when she made that identification,[11] nor is it plausible to infer that she was being untruthful merely from the fact that matters were pending against her or because she was too afraid to identify Plaintiff initially.  (*See id.*)  To the contrary, "[u]nder New York law an identified citizen informant is presumed to be reliable." *Caldarola v. Calabrese*, 298 F.3d 156, 165 (2d Cir. 2002).  Plaintiff further alleges that Wells, the victim who survived the shooting, informed MVPD detectives on October 1, 2012, that he had seen Plaintiff the night of the shooting and that he had heard from his cousins and others both that Plaintiff was the shooter and that he was trying to apologize to Wells.  (*See* AC ¶¶ 26-27; Doc. 20-11 at 5:13-18, 15:6-15.)[12]  Plaintiff does not allege that Wells was lying or mistaken or had been given false information, let alone that the officers had reason to believe that any of that was the case.  Nor does he allege facts that would otherwise have led, let alone required, the officers to discount the veracity of Smith's and Wells's accounts.  Instead, Plaintiff contends that probable cause was lacking simply because Burroughs lacked credibility.  (*See* P's County Opp. at 8.)  But Burroughs's lack of reliability has no bearing on the trustworthiness of other witnesses, and that allegation is insufficient to plead that Defendants pursued Plaintiff in the knowing absence of

---

[11]  Indeed, Plaintiff does not even allege in the AC that Smith was in fact lying.

[12]  Hearsay may be considered in connection with probable cause to arrest even if it would be inadmissible at trial. *Draper v. United States*, 358 U.S. 307, 311-12, 312 n.4 (1959).

probable cause.  *Cf. Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (rejecting

argument that conflicting accounts negates probable cause).

Plaintiff goes on at length about the trial evidence, (*see, e.g.*, P's City Opp. at 2-8), but

whether there was probable cause to arrest or charge, and whether there was proof beyond a

reasonable doubt, are two entirely different things.  *See, e.g.*, *United States v. Traylor*, No. 07-

CR-6125, 2009 WL 87470, at *10 (W.D.N.Y. Jan. 12, 2009) (adopting report and

recommendation), *aff'd*, 396 F. App'x 725 (2d Cir. 2010) (summary order); *Dale v. Kelley*, 908

F. Supp. 125, 135 (W.D.N.Y. 1995), *aff'd*, 95 F.3d 2 (2d Cir. 1996).  "The same evidence can be

insufficient for one but sufficient for the other."  *Garcia v. Gasparri*, 193 F. Supp. 2d 445, 453

(D. Conn. 2002).  In any event, the "[i]dentification of the suspect by a victim or eyewitness can

constitute, by itself, probable cause to prosecute."  *Nnodimele v. Derienzo*, No. 13-CV-3461,

2016 WL 337751, at *8 (E.D.N.Y. Jan. 27, 2016); *see Rodriguez v. State of New York*, No. 95-

CV-3639, 1996 WL 197749, at *2 (S.D.N.Y. Apr. 23, 1996) ("[T]he identification of an

individual as the perpetrator of a crime by a putative victim of, or eyewitness to, the crime is in

itself sufficient to establish probable cause, as long as it is reasonable to believe that the putative

victim or eyewitness is telling the truth.").[13]  Nor does the existence of potentially exculpatory

evidence negate probable cause, as long as there are "facts and circumstances supporting a

reasonable belief that a prosecution could succeed."  *Nnodimele*, 2016 WL 337751, at *10

(internal quotation marks omitted).  Here, Smith made an eyewitness identification of Plaintiff as

the shooter, and the information provided by Wells corroborated her.  At the very least, an

officer involved in the arrest would be entitled to qualified immunity, because it cannot be said

that all reasonable officers would agree that Smith's initial reluctance to identify the perpetrator

---

[13]  "[T]he testimony of a single, uncorroborated eyewitness is" even "generally sufficient to support a conviction."
*United States v. Danzey*, 594 F.2d 905, 916 (2d Cir. 1979).

of a violent act and her open cases made her so incredible that her information should be disregarded. *See, e.g.*, *Amore v. Novarro*, 624 F.3d 522, 536 (2d Cir. 2010) (officer qualifiedly immune if reasonable officers could disagree on whether probable cause test was met). Certainly no clearly established law required that conclusion. *See Buckley*, 509 U.S. at 268; *Amore*, 624 F.3d at 530.[14]

Based on the allegations in the AC, reasonably trustworthy information existed that was sufficient to warrant a person of reasonable caution in the belief that Plaintiff had committed a crime, *see Escalera*, 361 F.3d at 743, or at the very least reasonable officers could disagree on the point. Thus, Plaintiff's second cause of action is dismissed as to all Defendants.

3.     Malicious Prosecution

Plaintiff's third cause of action is for malicious prosecution under § 1983. Like claims for false arrest, "[c]laims for . . . malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for . . . malicious prosecution under state law." *Jocks*, 316 F.3d at 134 (quoting *Weyant*, 101 F.3d at 852). To prevail on a malicious prosecution claim under New York law, a plaintiff must prove "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Id.* at 136 (internal quotation marks omitted). A plaintiff bringing a § 1983 malicious prosecution claim must also plead a post-arraignment seizure, although "the requirements of attending criminal proceedings and obeying the conditions of bail suffice on that score," *id.*, and

---

[14] Although Defendants have not advance a qualified-immunity defense, the court can address the issue *sua sponte*. *See Ottati v. City of Amsterdam*, No. 06-CV-1370, 2011 WL 1204763, at *2 (N.D.N.Y. Mar. 28, 2011); *Doyle v. Coombe*, 976 F. Supp. 183, 187 (W.D.N.Y. 1997), *aff'd*, 159 F.3d 1346 (2d Cir. 1998).

that the "the criminal proceedings against him were terminated in a manner indicating his innocence," *Lanning v. City of Glens Falls*, No. 17-970, 2018 WL 5810258, at *7 (2d Cir. Nov. 7, 2018).

The City Defendants contend that Plaintiff's malicious prosecution claim should be dismissed as to them because Plaintiff has failed to plead that the City Defendants initiated the prosecution, that they lacked probable cause, or that they were motivated by actual malice. (City Ds' Mem. at 15-19.) Plaintiff's response is difficult to follow. In "Point Two" of his opposition brief, the heading for which states that he has pleaded sufficient facts for malicious prosecution, Plaintiff addresses only the third element of a malicious prosecution claim, (P's City Opp. at 11-12), and states that "his complaint for False Arrest and False Imprisonment should be allowed to go forward," (*id.* at 12). Subsections A and B to Plaintiff's "Point Eight," which pertains to Plaintiff's *Monell* claim, appear to contain additional arguments as to why Plaintiff's § 1983 malicious prosecution claim should proceed. (*See id.* at 18-19.) Specifically, he asserts that the great lengths the City Defendants took to investigate show that they initiated the prosecution and states, without explanation, that his claim is plausible. (*See id.*)

With respect to the first element of a malicious prosecution claim, "[t]here is a presumption that a prosecutor exercises independent judgment in deciding whether to initiate and continue a criminal proceeding." *Culpepper v. City of N.Y.*, No. 14-CV-6585, 2016 WL 5334978, at *5 (S.D.N.Y. Sept. 21, 2016) (internal quotation marks omitted). That presumption may be rebutted where an officer "ha[d] the plaintiff arraigned, . . . fill[ed] out complaining and corroborating affidavits, [or] sign[ed] felony complaints," *Mitchell v. Victoria Home*, 434 F. Supp. 2d 219, 227 (S.D.N.Y. 2006); *see Llerando-Phipps v. City of N.Y.*, 390 F. Supp. 2d 372, 383 (S.D.N.Y. 2005), where an officer "play[ed] an active role in the prosecution, such as giving

advice and encouragement or importuning the authorities to act," or where an officer withheld

material exculpatory evidence from the prosecutor or knowingly prepared a false confession that

formed the basis for the prosecution, *Manganiello v. City of N.Y.*, 612 F.3d 149, 163 (2d Cir.

2010) (alterations and internal quotation marks omitted); *see Stukes v. City of N.Y.*, No. 13-CV-

6166, 2015 WL 1246542, at *9 (E.D.N.Y. Mar. 17, 2015) (collecting cases). Therefore, "[t]o

initiate a prosecution, a defendant must do more than report the crime or give testimony."

*Manganiello*, 612 F.3d at 163; *see Stukes*, 2015 WL 1246542, at *9 (no initiation of prosecution

where officer merely had "typical interaction[s]" with the prosecutor's office by forwarding

audio and video tapes to the office and reviewed those tapes with a prosecutor); *Smith v. City of

N.Y.*, No. 04-CV-3286, 2010 WL 3397683, at *9 (S.D.N.Y. Aug. 27, 2010) (no initiation of

prosecution where officer's "only involvement in the prosecution was relaying to the ADA his

observations and the facts known to him regarding plaintiff's arrest and testifying before the

grand jury"), *aff'd sub nom. Smith v. Tobon*, 529 F. App'x 36 (2d Cir. 2013) (summary order).

In light of these principles, the allegations concerning the conduct of Defendants Ibanez,

Gamble, Clarke, Manzione, Adison, and Baltimore are insufficient to overcome the presumption

that the Westchester County District Attorney's Office acted with independent judgment. There

are no allegations that these officers had Plaintiff arraigned, filled out complaining or

corroborating affidavits, signed any felony complaints, pressured or encouraged prosecutors to

act, or otherwise played an active role in the prosecution. Indeed, the only officers specifically

alleged to have interacted with the District Attorney's Office in connection with Plaintiff's

criminal case are a Detective or Sergeant named "Wuttke," (AC ¶¶ 39-40), and Detective

DiMase, (*id.* ¶¶ 45-48), neither of whom is a defendant in this action. Further, Plaintiff cites no

authority for his contention that the extensive nature of the City Defendants' investigation

renders it plausible that the City Defendants initiated or continued the criminal proceeding against Plaintiff, and the Court has found none.

To the extent Plaintiff alleges that the presumption that the Westchester County District Attorney's Office acted with independent judgment is rebutted by MVPD officers' alleged suppression of exculpatory material or forwarding of fabricated evidence to prosecutors, his allegations are conclusory. He provides no facts whatsoever regarding fabricated evidence. Plaintiff alleges that Defendants lost a series of tapes and a thumb drive. (*Id.* ¶¶ 20-23, 28-31, 42, 44.)[15] He alleges that those tapes never revealed a time, (*id.* ¶ 21); that they "would have shown what type of day it was on the date in question and how people were dressed," (*id.* ¶ 28); that they would have provided Plaintiff an opportunity to "show contradictions of Sgt. Wuttke, *i.e.*, Clifton did not know the girls," (*id.* ¶ 41); and that "[f]rom the time that the police obtained the evidence, no one has ever seen it again," (*id.* ¶ 30). Whatever Plaintiff means by these statements, none of these allegations render it plausible that the evidence was exculpatory; indeed, Plaintiff does not even allege that the cameras at issue would have captured the crime. And he provides no information about what might have been contained in the thumb drive. There are simply no facts from which the Court can infer that the missing evidence would have had any effect on the prosecutor's decision-making, and thus the loss of the items – although inexcusable – cannot be said to amount to suppression of exculpatory evidence[16] sufficient to make the officers initiators of the prosecution.

---

[15] Plaintiff also alleges that the officers lost the original copy of a photo array by failing to voucher and safeguard the evidence in accordance with MVPD protocols, (AC ¶ 28), but he does not appear to contend that the array was exculpatory, (*see id.* ¶ 27 (alleging that Wells wrote that Plaintiff was the "one who supposed to have shot [him]" on the array)), or that the loss of the original, when a copy was preserved, harmed him.

[16] Plaintiff does not even allege that the loss of the items was intentional as opposed to negligent.

To the extent Plaintiff alleges that the presumption is rebutted because he alleges that Detective Gamble manufactured Wells's identification of Plaintiff, the facts in the AC do not make that conclusion plausible. Plaintiff alleges that Detective Gamble pointed to Plaintiff's picture in a photo array and instructed Wells to "write your initials there" after Wells had informed Detectives Gamble and Clarke that he saw Plaintiff the night of the shooting and "had heard on the street that [Plaintiff] was the shooter." (*Id.* ¶ 27.) That Gamble pointed to Plaintiff's photo made the identification useless, but does not amount to the fabrication of evidence. Indeed, Plaintiff concedes that the interaction between Gamble and Wells was captured on video, (*id.*), and does not allege that that video was withheld from the prosecutors.[17] Absent such an allegation, that Gamble botched a photo identification does not plausibly suggest that the District Attorney's decision to prosecute was not independent.[18]

Because Plaintiff has not plausibly overcome the presumption that the initiation of the prosecution was an independent decision of the Westchester County District Attorney's Office, his malicious prosecution claim is dismissed as to the City Defendants. The Court therefore need not address the City Defendants' arguments concerning other deficiencies with respect to this claim.

---

[17] Nor does he allege that the array or the video was withheld from him. To the contrary, he concedes that the trial judge suppressed the identification and the array was not used at trial. (P's City Opp. at 3.)

[18] For reasons that elude the Court, Plaintiff attached to the AC a photo array other than the one initialed by Wells. (Doc. 20-10.) Plaintiff alleges that Wells asked if he could indicate on the array that Plaintiff was "the one who supposed to have shot me," and that he then wrote "that statement" on the array. (AC ¶ 27.) On the array attached to the AC, the photo of one individual (presumably Plaintiff) is circled and the following is written next to the photo: "I saw him run down the block with the gun and shoot it at Cliff." (Doc. 20-10.) That is clearly not Wells's array because it lacks his statement and because he would not have referred to himself in the third person. The AC implies that Ricky Young picked Plaintiff out of a photo array, (AC ¶ 43), and if the array attached to the AC is Young's, that identification – which Plaintiff alleges was repeated by Young before the grand jury, (*id.*) – only strengthens the probable cause to charge Plaintiff.

28

The County Defendants also move to dismiss Plaintiff's malicious prosecution claim, arguing that Plaintiff has failed to plead the absence of probable cause or actual malice. (County Ds' Mem. at 9-11.) With respect to the absence of probable cause, Defendants contend that the AC alleges that probable cause existed in 2015. Indeed, the AC does seem to imply that the police and prosecutors had probable cause at some point in 2015, (*see* AC ¶ 29), which is before the grand proceedings were commenced in April 2016, (*see id.* ¶ 48). The County Defendants further argue that the grand jury indictment establishes probable cause and that the witness identifications of Plaintiff as the shooter also establish probable cause. (County Ds' Mem. at 9-10.) As for malice, Defendants contend that Plaintiff's allegations that "Defendants misrepresented and falsified evidence before the District Attorney of the County of Westchester County [*sic*]," (AC ¶ 77), and that "Defendants did not make a complete, full and truthful statement of facts to the District Attorney," (*id.* ¶ 78), defeat any argument that Plaintiff has plausibly pleaded that ADA Prisco acted with malice. (County Ds' Mem. at 10-11.) Although the phrase "malicious prosecution" does not appear in Plaintiff's opposition to the County Defendants' motion, he seems to argue that ADA Prisco lacked probable cause because she knew since December 2013 that Burroughs was not being truthful and that he has properly pleaded that ADA Prisco acted with malice because she failed to turn over *Brady* material for the two-and-a-half years preceding the grand jury proceedings, prosecuted Plaintiff notwithstanding her knowledge concerning Burroughs's untruthfulness, and made certain statements during her summation – statements that do not appear in the AC and that Plaintiff does not clearly identify in his opposition brief. (*See* P's County Opp. at 8-10.)[19]

---

[19] The only reference in the AC to Prisco's summation is to her argument that the City officers' incompetence in connection with the missing video evidence should not deprive the deceased of justice, (AC ¶ 53; Doc. 20-12 at 33-36), an argument that Plaintiff somehow construes as an admission of the City's liability, (AC ¶ 53).

In the malicious prosecution context, a grand jury indictment creates a presumption of probable cause. *Savino v. City of N.Y.*, 331 F.3d 63, 72 (2d Cir. 2003). That presumption "may *only* be rebutted by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" *Id.* (emphasis in original) (quoting *Colon v. City of N.Y.*, 455 N.E.2d 1248, 1251 (N.Y. 1983)). The burden of rebutting that presumption lies with the plaintiff, *id.* at 73, and a malicious prosecution claim may be "dismiss[ed] . . . at the pleading stage where the plaintiff has failed to allege facts sufficient to rebut the presumption of probable cause flowing from a grand jury indictment," *Hadid v. City of N.Y.*, 730 F. App'x 68, 71 n.1 (2d Cir. 2018) (summary order) (collecting cases).

Here, Plaintiff's indictment by a grand jury creates a presumption of probable cause. The facts alleged in the AC do not rebut that presumption. Plaintiff does not provide specific allegations concerning the evidence presented to the grand jury that would allow the court to draw the reasonable inference that the indictment was a product of fraud or other misconduct. *See Lewis v. City of N.Y.*, 591 F. App'x 21, 22 (2d Cir. 2015) (summary order). To the contrary, as discussed in connection with Plaintiff's second cause of action, the facts alleged in the AC show that there was probable cause to initiate a criminal proceeding against Plaintiff notwithstanding issues pertaining to Burroughs's credibility, and Plaintiff does not allege that anything developed during the course of the prosecution that would have dissipated probable cause. *See Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996); *Gaston v. City of N.Y.*, 851 F. Supp. 2d 780, 793-94 (S.D.N.Y. 2012). Plaintiff contends in his opposition brief that "Jason was a liar and Cliff, Ricky and Jasmine," (P's County Opp. at 9), from which the Court understands Plaintiff to assert that Jason Dulyx, Clifton Wells, Ricky Young, and Jasmine Smith provided false statements. But the AC does not plausibly allege that the Defendants had

any reason to believe that any of these witnesses gave false accounts (indeed, there are no allegations concerning Dulyx or his account),[20] and Plaintiff cannot amend a pleading through an opposition brief. *See, e.g.*, *Maxim Grp. LLC*, 690 F. Supp. 2d at 308. Accordingly, Plaintiff's malicious prosecution claim is dismissed as to the County Defendants.

### 4. Malicious Abuse of Process

The Defendants also move to dismiss Plaintiff's fourth cause of action, which is for malicious abuse of process. The elements of a claim for malicious abuse of process under § 1983 are derived from state law. *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994). "In New York, a malicious abuse of process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Id.* "'[A] malicious motive alone does not give rise to a cause of action for abuse of process.'" *Savino*, 331 F.3d at 77 (alteration omitted) (quoting *Curiano v. Suozzi*, 469 N.E.2d 1324, 1326 (N.Y. 1984)). A plaintiff "must claim that [the defendant] aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." *Id.*

The City and County Defendants contend that Plaintiff has failed to plead that they aimed to achieve a collateral objective beyond Plaintiff's prosecution. (City Ds' Mem. at 19-21; County Ds' Mem. at 10-11.) The City Defendants further argue that Plaintiff has failed to plead

---

[20] That a witness may have given inconsistent accounts or have a criminal record hardly makes that person necessarily incredible. Were that the case, many crimes – particularly violent crimes – could never be prosecuted. Certainly no clearly established law requires an officer or prosecutor to disbelieve such a witness, and the Defendants would be entitled to qualified immunity even assuming the witnesses were lying.

Further, given the "broad investigative function [of] the grand jury," *United States v. Suleiman*, 208 F.3d 32, 40 (2d Cir. 2000), and the fact that "one of [its] chief functions [is] the evaluation of the strength of the evidence and the credibility of witnesses," *United States v. Brito*, 907 F.2d 392, 395 (2d Cir. 1990), it is hardly surprising that prosecutors sometimes present witnesses to the grand jury to see what they will say "once placed in the solemn atmosphere of the grand jury room," *United States v. Chen*, 933 F.2d 793, 798 (9th Cir. 1991). Indeed, it is not misconduct even if the prosecutor anticipates that the witness may lie. *Id.*

a malicious motive.  (City Ds' Mem. at 19-21.)  Plaintiff fails to address these arguments.

Instead, he points to how the City Defendants lost evidence, contends that ADA Prisco elicited

perjury (although it is not clear from the complaint when or how she did this), and reiterates the

standard for deciding a motion to dismiss in general terms.  (*See* P's City Opp. at 12-13; P's

County Opp. at 10.)  But it does not plausibly follow that merely losing evidence or eliciting

testimony from a witness with credibility problems indicates that a defendant acted with the

intent to do harm.  Likewise, "tampering with evidence is not considered abuse of process

because the goal or purpose – convicting the defendant – is a legitimate use of process."  *Kraft v.

City of N.Y.*, 696 F. Supp. 2d 403, 416 (S.D.N.Y. 2010), *aff'd*, 441 F. App'x 24 (2d Cir. 2011)

(summary order).  Thus, even intentionally losing evidence or suborning perjury, absent a

collateral purpose beyond the desire to convict Plaintiff, is insufficient to state a claim for abuse

of process.  Because Plaintiff has failed to plausibly plead either bad intent or that Defendants

were pursuing any objective other than convicting Plaintiff, his claim for malicious abuse of

process is dismissed as to all Defendants.[21]

### 5.    Right to a Fair Trial

Plaintiff's fifth claim is for the denial of his right to a fair trial under § 1983.  He alleges

that Defendants created and suborned false evidence, that MVPD forwarded false evidence to

prosecutors, and that Defendants misled the judges and prosecutors by providing false testimony

and proffering false evidence.  (AC ¶¶ 91-95.)  Although it is apparent that Plaintiff asserts his

fifth cause of action against the City Defendants, it is not clear whether he brings this claim

against ADA Prisco as well.

---

[21]  Having dismissed Plaintiff's abuse-of-process claim for failure to plead malice or a collateral objective, the Court
need not address the City Defendants' contention that probable cause is a complete defense to an abuse-of-process
claim.  (City Ds' Mem. at 20.)

"The Second Circuit has held that '[i]t is firmly established that a constitutional right exists not to be deprived of liberty on the basis of false evidence fabricated by a government officer.'" *Morse v. Spitzer*, No. 07-CV-4793, 2013 WL 359326, at *3 (E.D.N.Y. Jan. 29, 2013) (alteration in original) (quoting *Zahrey v. Coffey*, 221 F.3d 342, 355 (2d Cir. 2000)). To prevail on a claim for denial of a fair trial based on fabricated evidence, a plaintiff must prove that "an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result." *Jovanovic v. City of N.Y.*, 486 F. App'x 149, 152 (2d Cir. 2012) (summary order) (citing *Jocks*, 316 F.3d at 138); *see Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279-80 (2d Cir. 2016); *Shabazz v. Kailer*, 201 F. Supp. 3d 386, 394-95 (S.D.N.Y. 2016). Probable cause is not a defense to a denial of a fair trial claim. *Morse*, 2012 WL 3202963, at *5.

The City Defendants contend that this claim must be dismissed as to them because Plaintiff's allegations that the City Defendants falsified evidence and forwarded it to prosecutors are conclusory. (City Ds' Mem. at 21-22.) Plaintiff responds that he has plausibly pleaded a constitutional violation, asserting that he "has placed all these items in the [f]acts of the complaint with references to the trial transcripts for an exhibit for the Court to make it's [*sic*] conclusion." (P's City Opp. at 14.) Plaintiff further contends that he has properly pleaded a conspiracy to support his fair trial claim; that Defendants had "Tyshawn Burroughs, or Cliff Webb [*sic*], or Ricky Young" lie to help the District Attorney's Office indict Plaintiff and

deprive him of a fair identification procedure;[22] and that Defendants lost evidence, thereby depriving Plaintiff of an alibi and his ability to testify at trial.  (*Id.* at 14-15.)[23]

Plaintiff's response is emblematic of the problem with his AC:  it is conclusory. Although Plaintiff states that he has properly pleaded a cause of action for the denial of a fair trial, he fails to cite a single paragraph of the AC to support that assertion.  Instead, he seems to expect the Court to sift through his AC and the exhibits attached thereto to divine a claim.  That, however, is not the role of the Court on a motion to dismiss.

Moreover, as previously discussed, Plaintiff has not plausibly alleged that the lost evidence was exculpatory.  He also has not plausibly alleged in his AC that any of the City Defendants fabricated – that is "invent[ed], forge[d], or devise[d] falsely" – any evidence. *Fabricate*, Black's Law Dictionary (10th ed. 2014).  Instead, he pleaded that Detective DiMase (who is not a defendant) candidly identified the inconsistencies in Burroughs's account.  (AC ¶¶ 45, 48; Doc. 20-8.)[24]  Plaintiff's allegations concerning Ricky Young's account, which are nearly impossible to follow, concern Officer Wuttke, not any of the Defendant officers.  (*See* AC ¶¶ 39-44.)  With respect to Wells, Plaintiff alleges that on August 9, 2011, unnamed officers obtained a statement that Wells did not see who shot him and that Wells told Detectives Gamble and Clarke in the fall of 2012 that, among other things, he heard on the street that Plaintiff was the shooter.  (AC ¶¶ 16, 27; Doc 20-11 at 15:6-18, 16:4-7.)  Plaintiff does not allege that the Defendants concocted those aspects of Wells's account or even that they were false.  The closest

---

[22]  The Court assumes that Plaintiff's reference to "Cliff Webb" was a typographical error and that Plaintiff intended to refer to Clifton Wells.  To the extent Plaintiff meant to refer to "Cliff Webb," there is no reference to such a person in the AC.

[23]  Plaintiff's opposition brief contains incomplete sentences and is confusingly worded.  This is the Court's best attempt to discern Plaintiff's argument as to why he believes that he has properly pleaded a claim for denial of a fair trial.

[24]  Plaintiff concedes that Burroughs did not testify at trial.  (P's City Opp. at 6.)

Plaintiff comes to pleading that evidence was fabricated is his allegation that Detective Gamble pointed to Plaintiff's picture in a photo array and said, "[W]rite your initials there," after Wells had stated that he had seen Plaintiff before the shooting and had heard that Plaintiff was the shooter.  (AC ¶ 27.)  But, as previously stated, this conduct does not plausibly amount to the fabrication of evidence and even if it did, Plaintiff concedes that the allegedly manufactured evidence was not used at his trial.  (P's City Opp. at 3.)

As for Plaintiff's contention that he has sufficiently pleaded the claim "via a conspiracy," (*id.* at 13), the allegations contained in his AC concerning his denial of a fair trial claim make no reference to a conspiracy, (*see* AC ¶¶ 92-95), and amendment by opposition brief will not be permitted, *see, e.g.*, *Maxim Grp. LLC*, 690 F. Supp. 2d at 308.  Moreover, as discussed below in connection with the § 1983 conspiracy claim, Plaintiff has failed to plausibly plead that the City Defendants were part of a conspiracy.  Accordingly, Plaintiff's fifth cause of action is dismissed as to the City Defendants.

The County Defendants also seek dismissal of Plaintiff's denial of a fair trial claim, arguing that such a claim cannot arise absent a conviction and thus Plaintiff's acquittal extinguished the claim.  (*See* County Ds' Mem. at 11.)  In so arguing, Defendants point to *Schiavone Construction Co. v. Merola*, where the court concluded in the context of prejudicial pre-trial publicity that "no denial of a fair trial can be shown where the plaintiff was acquitted of the crime charged."  678 F. Supp. 64, 66 (S.D.N.Y.), *aff'd*, 848 F.2d 43 (2d Cir. 1988) (*per curiam*).  Plaintiff responds, without citing any authority, that an acquittal does not preclude his claim.  (P's County Opp. at 10-11.)

As a preliminary matter, the contours of Plaintiff's denial of a fair trial claim as to the County Defendants are unclear.  Plaintiff alleges that "Defendants created suborned and created

[*sic*] false evidence," (AC ¶ 92), but there are no specific allegations that ADA Prisco falsified evidence. He further asserts that "Defendants misled the judges and prosecutors by providing false testimony and proffering false evidence," (*id.* ¶ 94), but there are no specific allegations as to what evidence ADA Prisco presented that she knew was false.

Instead, Plaintiff alleges that ADA Prisco belatedly turned over evidence. (*See id.* ¶¶ 48-49, 52.) Courts have categorically rejected denial of a right to fair trial claims based on *Brady* violations where the plaintiff was not convicted in the underlying criminal trial. *See Tiscareno v. Frasier*, 603 F. App'x 672, 679 (10th Cir. 2015) (unpublished) (collecting cases); *see also Ambrose*, 623 F. Supp. 2d at 471 ("[T]he verdict acquitting Plaintiff of the criminal charges against him negates any violation of his *Brady* rights and extinguishes any Section 1983 due process claim that might arise from Defendants' alleged suppression of exculpatory evidence."). "[S]trictly speaking, there is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a *different verdict*." *Strickler v. Greene*, 527 U.S. 263, 281 (1999) (emphasis added). Thus, where an individual is acquitted, he cannot establish that, had the exculpatory or impeachment evidence not been suppressed, there is a reasonable probability that the verdict would have been different.

Accordingly, Plaintiff has failed to state a claim for the denial of a right to a fair trial against the County Defendants as well.

### 6. Conspiracy

Plaintiff's sixth cause of action is a § 1983 conspiracy claim, which requires that he plausibly allege: "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002). "A

complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Leon v. Murphy*, 988 F.2d 303, 311 (2d Cir. 1993) (internal quotation marks omitted).

The City and County Defendants contend that Plaintiff has failed to plead facts to plausibly allege a meeting of the minds sufficient to sustain a § 1983 conspiracy because he offers no more than conclusory, vague, and general allegations of a conspiracy to deprive him of his constitutional rights. (City Ds' Mem. at 22-23; County Ds' Mem. at 11-12.) With respect to the City Defendants, Plaintiff responds that he has sued several state actors and a private party, that the City Defendants had witnesses lie so they could help the District Attorney's Office make a case against Plaintiff, and that they acted "[i]n furtherance of goals" – goals that Plaintiff does not specify. (P's City Opp. at 14-15.) He further asserts that the Court should consider what was pleaded in the AC, such as "how all the evidence which could have exculpated [P]laintiff which was in Defendants' possession was lost in each instance" as well as "the evidence which was lost by former Police Det[ective] Ibanez in an unrelated case to establish this was a § 1983 conspiracy." (*Id.* at 15-16 (emphasis omitted).) The relevance of such evidence to a conspiracy claim is unclear. Regardless, Plaintiff makes no argument, and alleges no facts, to plausibly suggest that the City Defendants agreed to act in concert to inflict a constitutional injury. Instead, the AC contains only boilerplate allegations of a conspiracy. (AC ¶¶ 97-99.) This is fatal to Plaintiff's conspiracy claim. *See Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011).[25]

---

[25] Plaintiff argues in his opposition to the County Defendants' motion that the standard articulated by the Second Circuit in *Gallop* – that "claims of conspiracy containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss," 642 F.3d at 369 (internal quotation marks omitted) – "is not proper in the current proceeding," (Ps' County Ds' Opp. at 10). But he does not explain what he means by this, or why that precedent is inapplicable, nor does he point to specific portions of his AC that demonstrate how the plausibility standard is met.

For similar reasons, Plaintiff's claim must be dismissed as to the County Defendants. In response to their motion to dismiss, Plaintiff contends that

> [t]he meeting of the minds clearly is shown when Defendants and their witnesses such as [Burroughs] and Jason [Dulyx], and Cliff and Jasmine and Ricky meet at the bequest [*sic*] of the Prosecution and come up with agreements which allow them to receive benefits such as receiving benefits for lying, to get themselves out of bench warrants, or to get favorable treatment for outstanding cases or get monies for living arrangements.

(P's County Opp. at 11.) He further contends that he "has alleged these violations in his amended complaint and has provided testimony and accompanying exhibits." (*Id.*) But Plaintiff cannot amend a pleading through his opposition brief, *see, e.g.*, *Maxim Grp. LLC*, 690 F. Supp. 2d at 308, and the AC contains no allegations that plausibly support an agreement between the County Defendants and any witnesses. If anything, the AC suggests Prisco was lied to. (*See* AC ¶¶ 77-78.) Further, it is ludicrous to suggest that the everyday event of a prosecutor making deals with witnesses – even if the AC were to describe any such deals, which it does not – would plausibly suggest a conspiracy. *See Gordon v. City of N.Y.*, No. 10-CV-5148, 2012 WL 1068023, at *13 (E.D.N.Y. Mar. 29, 2012) (cooperation agreement with witness insufficient to plausibly suggest conspiracy); *cf. San Filippo v. U.S. Tr. Co. of N.Y.*, 737 F.2d 246, 256 (2d Cir. 1984) (prosecutor preparing witnesses is "routine and necessary," and if sufficient to suggest impropriety, would subject every government witness to "burden of defending a costly civil suit charging 'conspiracy' to give false testimony"). The AC contains no facts plausibly suggesting that ADA Prisco agreed with others to inflict unconstitutional harm on Plaintiff, and thus the claim is dismissed as to the County Defendants as well.

7.    Failure to Intervene

Plaintiff's seventh cause of action is for failure to intervene, which he asserts against each "individual defendant."  (AC ¶¶ 101-03.)  "It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence."  *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994).  "Liability may attach only when (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene."  *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008), *aff'd sub nom. Jean-Laurent v. Wilkerson*, 461 F. App'x 18 (2d Cir. 2012) (summary order).

The City Defendants contend that this claim should be dismissed as to them because Plaintiff's AC is conclusory and "bereft of any facts to support the notion that any of the City Defendants had a duty or an opportunity to intervene."  (City Ds' Mem. at 23.)  In opposition, Plaintiff argues, without citing to a single paragraph of his AC, that "it should be abundantly clear that the police had a reasonable opportunity to intervene to prevent the harm from occurring" and that "if these police officers could have simply done their job and followed the patrol guide and properly voucher [*sic*] the evidence that would have prevented any harm happening [*sic*] and defendant would have been able to put forth defenses such as an alibi or possibly even testify [o]n his own behalf."  (P's City Opp. at 16.)  Plaintiff also contends that "[c]learly" there were doubts about the truthfulness of Burroughs, Dulyx, and "Webb [*sic*]" and thus the officers should have gathered more information.  (*Id.*)

The County Defendants argue that the claim should be dismissed because there is no underlying constitutional violation, the claim is asserted against all "individual defendants" and ADA Prisco is sued only in her official capacity, and Plaintiff has failed to plead that the County Defendants had a realistic opportunity to intervene. (County Ds' Mem. at 12-13.) In his opposition, Plaintiff asserts, without citing any authority, that "ADA Prisco had an affirmative duty to intervene to [p]rotect Plaintiff once she found out that her witnesses were untruthful and were being reported by Det[ective] DiMase," that a reasonable person would know that Plaintiff's rights were being violated, that "Prisco took no steps to intervene in December of 2013," and that she had plenty of time to investigate further because Plaintiff was not indicted until May 2016. (P's County Opp. at 11.)

Plaintiff's responses to the arguments put forth by both sets of Defendants are, to the extent comprehensible, unavailing. Although it is inexcusable that certain officers lost evidence, it does not plausibly follow that the other officers or ADA Prisco had an opportunity to prevent that loss or any constitutional harm that might flow from it. Indeed, absent plausible allegations that the evidence was exculpatory or how the other Defendants might know of it, it is impossible to see how they could know that Plaintiff's constitutional rights were being violated.

To the extent Plaintiff is suggesting that putting witnesses with credibility issues in the grand jury is improper, the suggestion is farcical. *See supra* note 20. A grand jury is an investigative body entitled to weigh witness credibility. *See, e.g.*, *United States v. Calandra*, 414 U.S. 338, 343-44 (1974); *United States v. O'Connor*, 750 F. Supp. 90, 93 (W.D.N.Y. 1990); *New York v. Taylor*, 870 N.Y.S.2d 791, 792 (App. Div. 1st Dep't 2009). Indeed, even using a witness with credibility issues at trial – which happens every day – is not a constitutional violation unless the prosecutor knows or should know that the witness is lying, *see Perkins v. Le Fevre*, 691 F.2d

616, 619 (2d Cir. 1982), which is not plausibly alleged here.  Law enforcement officials must routinely assess witness credibility.  If probable cause exists, as it did here, that a jury ultimately finds that the beyond-a-reasonable-doubt standard was not met hardly suggests that the prosecutor knowingly elicited false testimony.

Plaintiff's contentions concerning the City Defendants' and ADA Prisco's alleged failure to investigate do not save his claim.  The cases upon which Plaintiff relies do not pertain to claims for failure to intervene, nor do they demonstrate that prosecutors have a duty to investigate or that police must continue to investigate once they are in possession of facts sufficient to establish probable cause.  To the contrary, where, as here, probable cause is established, there is no constitutional right to demand further investigation before arrest or prosecution. *Virgil v. Town of Gates*, 455 F. App'x 36, 40 (2d Cir. 2012) (summary order) (collecting cases); *see Panetta v. Crowley*, 460 F.3d 388, 398 (2d Cir. 2006) ("Once an officer has probable cause, he or she is [not] required . . . to continue investigating, sifting and weighing information.") (internal quotation marks omitted).

In any event, it is well settled that "a failure to intervene claim is contingent upon the disposition of the primary claims underlying the failure to intervene claim." *Case v. City of N.Y.*, 233 F. Supp. 3d 372, 401 (S.D.N.Y. 2017) (internal quotation marks omitted).  Plaintiff's failure to intervene claim appears to be contingent on his false arrest and malicious prosecution claims, (*see* AC ¶ 103), which have been dismissed.  To the extent his failure to intervene claim pertains to another cause of action, those claims, too, have been dismissed.

Accordingly, Plaintiff's failure-to-intervene claim is dismissed for failure to state a claim against all Defendants.

8.    Negligent Hiring, Retention, Supervision & Training

Defendants also move to dismiss Plaintiff's cause of action for negligent hiring, retention, supervision, and training. As a preliminary matter, it is not readily apparent against which Defendant(s) the claim is asserted. Plaintiff alleges that unspecified defendants failed to use reasonable care in hiring, training, and supervising unspecified defendants, (AC ¶¶ 120, 122), and then states that "Defendant Mount Vernon Police Department[] knew or should have known in the exercise of reasonable care, the propensities of the defendants to engage in the wrongful conduct heretofore alleged in this Complaint," (*id.* ¶ 121). So while the claim appears to be asserted only against the City Defendants, it is unclear which Defendants were negligent in hiring, retaining, supervising, and training which officers. Additionally, although the "wrongful conduct" at issue seems to be the loss of evidence, that is far from clear. Because the allegations in Plaintiff's AC fail to give each Defendant fair notice of the claims against them, the claim is dismissed pursuant to Rule 8. *Canon U.S.A.*, 2017 WL 4357339, at *7.

Even assuming that the AC provides fair notice to the City Defendants, it must be dismissed for failure to state a claim. "A claim for negligent hiring, retention, supervision, and training is based on the employer's direct negligence." *Cruz v. New York*, 24 F. Supp. 3d 299, 311 (W.D.N.Y. 2014) (internal quotation marks omitted). "Claims for negligent hiring and retention arise from an employer having placed the employee in a position to cause foreseeable harm, harm which the injured party most probably would have been spared had the employer taken reasonable care in making its decision concerning the hiring and retention of the employee." *Id.* (internal quotation marks omitted). "Similarly, claims for negligent supervision and training arise when an employer has notice of the employee's tendency for the bad conduct and its lack of supervision or inadequate training is the proximate cause of a plaintiff's injuries."

*Id.* (internal quotation marks omitted). "[A]n essential element of a cause of action in negligent hiring, retention, supervision, and training is that the employer knew or should have known of the employee's propensity for the conduct which caused the injury." *Bouche v. City of Mount Vernon*, No. 11-CV-5246, 2012 WL 987592, at *9 (S.D.N.Y. Mar. 23, 2013).

The City Defendants argue the Plaintiff's allegations are conclusory. (*See* City Ds' Mem. at 24-25.) Plaintiff responds that discovery is needed. (P's City Opp. at 17.) But "*Twombly* and *Iqbal* require that [Plaintiff] plead specific facts showing that [he] is entitled to more discovery." *P&S Printing LLC v. Tubelite, Inc.*, No. 14-CV-1441, 2015 WL 4425793, at *6 (D. Conn. July 17, 2015) (collecting cases); *see Anguilo v. Cty. of Westchester*, No. 11-CV-7823, 2012 WL 5278523, at *3 n.4 (S.D.N.Y. Oct. 25, 2012) ("[A]s *Iqbal* makes clear, a plausible claim must come *before* discovery, not the other way around.") (emphasis in original). Additionally, Plaintiff, at the very least, has not alleged facts sufficient to infer that the City of Mount Vernon or any individual Defendants who were supervisory officers knew of the officers' propensity to act in the manner alleged and thus the claim must be dismissed. *See Cruz*, 24 F. Supp. 3d at 311; *Bouche*, 2012 WL 987592, at *9.[26]

To the extent Plaintiff asserts a claim for negligent hiring, retention, supervision, and training against the County Defendants, the claim must be dismissed as to them as well. He asserts no factual allegations as to how ADA Prisco or the County of Westchester were negligent

---

[26] The closest Plaintiff comes is noting that Ibanez lost video evidence in another case. (AC ¶ 60.) But Plaintiff presents no allegations that any other individual Defendant was aware of that fact, and a single instance is generally insufficient to provide notice to the municipal employer. *See Dwares v. City of N.Y.*, 985 F.2d 94, 100 (2d Cir. 1993), *overruled on other grounds by Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993); *see also Connick v. Thompson*, 563 U.S. 51, 62 (2011) (pattern of similar violations generally necessary to put employer on notice). Further, the failure to properly voucher the video evidence in this case apparently occurred in August 2011. (AC ¶¶ 19-23.) But the other case to which Plaintiff points was filed in 2013 and refers to a loss of evidence occurring in October or November 2011, *see Sudu v. City of Mount Vernon*, No. 13-CV-5557, (S.D.N.Y. Aug. 9, 2013), Doc. 1, so that case could not have provided notice to anyone at the time of the misconduct alleged here. *See Kucera v. Tkac*, No. 12-CV-264, 2013 WL 1414441, at *6 (D. Vt. Apr. 8, 2013) (cases filed after conduct alleged by plaintiff cannot serve as notice).

in hiring, retaining, supervision, and training employees.  In opposing the County Defendants'

motion, Plaintiff points to allegations in the AC concerning the conversation between ADA

Prisco and MVPD Detective DiMase[27] and asserts for the first time in his opposition brief that

Plaintiff did not receive any documentation of this conversation (as opposed to the report itself)

until the underlying criminal trial.  (P's County Opp. at 12.)[28]  Plaintiff does not explain how

these allegations support a claim for negligent hiring, retention, supervision, and training against

the County Defendants, nor can the Court discern one.[29]  Accordingly, to the extent Plaintiff

asserts his ninth cause of action against the County Defendants, it is dismissed as to them as

well.

9.    *Monell* Liability

Defendants also move to dismiss Plaintiff's municipal liability claim.  "To hold a

[municipal defendant] liable under § 1983 for the unconstitutional actions of its employees, a

plaintiff is required to plead and prove three elements:  (1) an official policy or custom that (2)

causes the plaintiff to be subjected to (3) a denial of a constitutional right."  *Wray v. City of N.Y.*,

490 F.3d 189, 195 (2d Cir. 2007) (alteration and internal quotation marks omitted).  To allege

such a policy or custom, the plaintiff may assert:

> (1) the existence of a formal policy officially endorsed by the municipality; (2)
> actions taken or decisions made by municipal officials with final decision making
> authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice
> so persistent and widespread that it constitutes a custom of which constructive
> knowledge can be implied on the part of the policymaking officials; or (4) a failure

---

[27]  Plaintiff cites to paragraph 48 of the AC as describing this conversation, (P's County Opp. at 12), but that
paragraph does not mention any such conversation.  The Court assumes Plaintiff meant to refer to paragraph 46.

[28]  Plaintiff cites paragraph 52 of the AC in support of his contention that he did not receive any documentation of
the conversation until trial.  (P's County Opp. at 12.)  Paragraph 52, however, makes no reference to Detective
DiMase or the conversation he allegedly had with ADA Prisco.

[29]  If Plaintiff means to assert that Prisco was training DiMase in how to write reports, the claim fails for the reason
stated on page 16-17 above:  there is no right to have an officer's analysis in a report, and advising an officer to stick
to the facts is entirely appropriate.

by policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact with the municipal employees.

*Betts v. Shearman*, No. 12-CV-3195, 2013 WL 311124, at *15 (S.D.N.Y. Jan. 24, 2013) (internal quotation marks omitted), *aff'd*, 751 F.3d 78 (2d Cir. 2014). "[M]ere allegations of a municipal custom, a practice of tolerating official misconduct, or inadequate training and/or supervision are insufficient to demonstrate the existence of such a custom unless supported by factual details." *Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL 1379652, at *13 (S.D.N.Y. Mar. 26, 2015). Further, while "[i]t is well settled that 'the inadequacy of police training may serve as the basis for § 1983 liability where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact," "[t]he deliberate indifference standard is 'stringent' and requires 'proof that a municipal actor disregarded a known or obvious consequence of his action.'" *Turczyn ex rel. McGregor v. City of Utica*, No. 13-CV-1357, 2014 WL 6685476, at *5 (N.D.N.Y. Nov. 26, 2014) (alteration omitted) (first quoting *City of Canton v. Harris*, 489 U.S. 378, 380 (1989); and then quoting *Connick*, 563 U.S. at 61).

I need not address *Monell* liability because no underlying constitutional claims survive. *Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006). Even if they did, a municipal liability theory would fail. Plaintiff offers only conclusory allegations of "customs and practices of tolerating lawlessness and corruption" amounting to "deliberate indifference." (AC ¶ 110; *see id.* ¶¶ 58-60, 108, 111.) He provides no facts to plausibly support this conclusion. Instead, he points to a series of general and unrelated alleged shortcomings of the MVPD and its officers and attempts to unite them under a single policy of tolerating lawlessness and corruption. But these allegations do not constitute the "*pattern* of *similar* constitutional violations" that is ordinarily

necessary to demonstrate deliberate indifference. *Connick*, 563 U.S. at 62 (emphases added).[30]

"While a court may not apply a heightened pleading standard to *Monell* claims, 'boilerplate' conclusions as to municipal liability will not suffice, even at this early stage of the litigation." *Betts*, 2013 WL 311124, at *15 (citation omitted); *see Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) ("[T]he mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.") (second alteration in original) (internal quotation marks omitted); *Turczyn*, 2014 WL 6685476, at *6 (municipal liability insufficiently pleaded where complaint used label "deliberate indifference" and generically referenced failure to train, but did not "allege facts that support either conclusory notion"); *Guerrero v. City of N.Y.*, No. 12-CV-2916, 2013 WL 673872, at *2 (S.D.N.Y. Feb. 25, 2013) ("[B]oilerplate claims do not rise to the level of plausibility required to state a viable *Monell* claim.") (internal quotation marks omitted). Accordingly, Plaintiff's *Monell* claim fails as to the City Defendants.

The County Defendants assert that Plaintiff's *Monell* claim must be dismissed as to them because the AC does not identify any specific policies or customs of the County that would give rise to liability under *Monell*. (County Ds' Mem. at 14-15.) Plaintiff provides no response in his opposition brief. Accordingly, he has abandoned the claim insofar as it is asserted against the

---

[30] Most of Plaintiff's examples relate to officers other than the Defendants and, with the exception of Ibanez losing evidence, those that do describe wholly different kinds of alleged misconduct. (AC ¶ 60.) They thus cannot serve as notice to the City of any tendency on the part of the individual officers to commit the kinds of acts of which Plaintiff complains here.

*Connick* illustrates the level of specificity required for a pattern. There the plaintiff pointed to four previous reversals for *Brady* violations, and the Supreme Court found that those could not have given the District Attorney notice of a need to train because they did not involve failure to disclose physical or scientific evidence, as the plaintiff's case did. *See* 563 U.S. at 62-63. If one type of *Brady* violation does not suffice as notice for other types of *Brady* violations, the scattershot claims of multiple unrelated types of misconduct here also cannot suffice. Plaintiff also relies on "contemporaneous or subsequent conduct [that] cannot establish a pattern of violations that would provide notice." *Id.* at 63 n.7 (internal quotation marks omitted).

46

County Defendants. *Div. 1181 Amalgamated Transit Union*, 2018 WL 794572, at *4 (collecting cases); *Romeo & Juliette Laser Hair Removal, Inc.*, 2014 WL 4723299, at *7. Moreover, the AC does not plausibly plead any policy or custom of the County Defendants that violated his rights. Plaintiff's *Monell* claim against the County Defendants is therefore also dismissed for failure to state a claim.

### D.  State Law Claims

In addition to his § 1983 claims, Plaintiff asserts four claims arising under New York law. (AC ¶¶ 126-52.) The "traditional 'values of judicial economy, convenience, fairness, and comity'" weigh in favor of declining to exercise supplemental jurisdiction where all federal-law claims are eliminated before trial. *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Having determined that the only claims over which this Court has original jurisdiction should be dismissed, I decline to exercise supplemental jurisdiction over Plaintiffs' remaining state law causes of action. *See id.* (citing 28 U.S.C. § 1367(c)(3)). Accordingly, Plaintiff's tenth, eleventh, twelfth, and thirteenth causes of actions are dismissed without prejudice.

## IV.  <u>LEAVE TO AMEND</u>

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). It is "within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility

of amendment, etc.'" *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended once, (Doc. 20), after having the benefit of a pre-motion letter from Defendant Westchester County and former Defendant Anthony Scarpino, (Doc. 9); the City Defendants' anticipated grounds for dismissal, which were stated during the September 11, 2017 conference; as well as the Court's observations during that conference. In general, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first. Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories seriatim.") (alteration, footnotes, and internal quotation marks omitted); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (internal quotation marks omitted).

Plaintiff was largely on notice of the deficiencies with his original complaint and has failed to rectify them in his AC.[31]  Further, although he has asked to amend again, he has not suggested that he is in possession of facts that would cure the deficiencies identified in this opinion.  Accordingly, the Court declines to grant leave to amend.  *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if he fails to specify how amendment would cure the pleading deficiencies in his complaint); *Gallop*, 642 F.3d at 369 (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (denial of leave to amend would be proper where "request gives no clue as to how the complaint's defects would be cured") (internal quotation marks omitted).

## V.    CONCLUSION

For the reasons stated above, the motions to dismiss of the City Defendants and the County Defendants are granted.  Claims One through Nine are dismissed with prejudice, and claims Ten through Thirteen are dismissed without prejudice.  The Clerk of Court is respectfully directed to terminate the pending motions, (Docs. 27, 31), and close the case.

**SO ORDERED.**

Dated: December 3, 2018
      White Plains, New York

_____
UNITED STATES DISTRICT JUDGE

---

[31] While the County Defendants' pre-motion letter did not specifically refer to ADA Prisco, as she was not then a named Defendant, that letter raised the issue of prosecutorial immunity.  (Doc. 9.)